# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SIOBHAN DONEGAN,

    Plaintiff,

    v.

IRENE LIVINGSTON, TERRE FEINBERG, and FREDERICK MILL,

    Defendants.

CIVIL ACTION NO. 3:11-cv-812

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff Siobhan Donegan's Motion for Reconsideration. (Doc. 22.) Because there is no clear prohibition on police officers conducting special needs searches, I find no clear error in my previous Memorandum and Order and the Plaintiff's motion will be denied.

## BACKGROUND

Plaintiff Siobhan Donegan was employed by the East Stroudsburg Area School District ("the District") as an instructional aide. On December 2, 2010, the Principal at the school in which she was working was alerted to an alleged smell of alcohol on Donegan's breath. This initiated a protocol in which Donegan was transported to Pocono Medical Occupational Health for a Breathalyzer test. She was taken there by Defendant Frederick Mill, the Chief of Police for the District's police department, and Defendant Terre Feinberg, an officer of that department.

The Breathalyzer registered negative for alcohol. From this, Donegan alleges that Defendant Principal Irene Livingston fabricated the claim of public intoxication and had Donegan arrested in an effort to embarrass her and force her to quit her job. Donegan further alleges that Defendants Mill and Feinberg knew that she was not intoxicated but still

paraded her in front of students and parents at the School while in their custody. Donegan therefore brought two claims under 42 U.S.C. § 1983 for unlawful arrest and retaliatory filing of charges against all three Defendants as well as state-law claims for unlawful arrest, slander, libel, and a false light invasion of privacy.

In a July 3, 2012 Memorandum and Order, I dismissed Donegan's constitutional claims with prejudice and declined to exercise supplemental jurisdiction over the remaining state-law claims. *Donegan v. Livingston*, --- F. Supp. 2d. ---, 2012 WL 2586862 (M.D. Pa. July 3, 2012). In particular, I held that Donegan's limited search and detention were reasonable as a special needs exception to the Fourth Amendment.

On July 11, 2012, Donegan filed a timely motion for reconsideration[1] of the above Order. (Doc. 22.) In it, she argues that the special needs exception cannot be applied where, as here, the state actors are police officers. This motion has been fully briefed and is now ripe for the Court's review.

## DISCUSSION

**I. Legal Standard**

This Motion for Reconsideration arises under Rule 59(e) of the Federal Rules of Civil Procedure. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following: "(1) an intervening change in

---

[1] This motion for reconsideration is also styled as a cross motion for partial summary judgment. Since the motion for reconsideration will be denied, this second aspect of the motion is ultimately moot. However, such a motion for summary judgment is untimely and without leave as the deadline for dispositive motions in this matter was set for March 30, 2012.

2

controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 606 (M.D. Pa. 2002). Specifically, it is not a vehicle to "raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, Civ. A. No. 05-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Such reconsideration is an extraordinary remedy, and should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp.2d 502, 504 (M.D. Pa. 1999).

**II. Analysis**

Plaintiff Siobhan Donegan argues that the special needs doctrine cannot apply to situations where the actors are police officers. In support of this position, Donegan cites primarily to Justice Powell's concurrence in *New Jersey v. T.L.O.*, 469 U.S. 325, 349, (1985), which–in approving special needs searches for students–noted that the "special relationship between teacher and student" contrasted with the adversarial relationship between police officers and their suspects. This observation, still resounding today, establishes only that a special needs search applies in instances "where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement." *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989). As such, programs with an "immediate objective" uncovering evidence for law enforcement

3

do not "fit within the closely guarded category of 'special needs.'" *Ferguson v. City of Charleston*, 532 U.S. 67, 83-84 (2001).

Justice Powell's dicta in *T.L.O.* does not compel a different result in the instant matter, especially since *T.L.O.* expressly declined to opine on "the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies." 469 U.S. at 341 n.7. Some cases recognize, however, that certain special needs search cannot be conducted by a law enforcement officer unless they are acting under the direction of someone else. *See e.g. United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007) (finding that, in the context of parolee searches, that special needs searches did not extend to police officers unless acting for a parole officer); *but see Neumeyer v. Beard*, 421 F.3d 210, 216 (3d Cir. 2005) (upholding searches of visitors' vehicles at a prison by corrections officers).

The Court finds no authority for the proposition that police officers are *per se* precluded from conducting special needs searches. And, while the aim of such a search must not be "ultimately indistinguishable from the general interest in crime control," *City of Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000), "[t]he mere fact that a search may result in arrest and criminal prosecution, and thus have the ancillary effect of furthering ordinary law enforcement concerns, does not negate the applicability of the special needs doctrine." *Neumeyer v. Beard*, 421 F.3d 210, 215 (3d Cir. 2005).

The matter *sub judice*, however, does not even present such a close case since the facts indicate that the officers in question were not acting in any law enforcement capacity at the relevant time, but were instead acting at the direction of the administrators.

4

Specifically, Chief Mill represented that he had "no intentions to investigate anything" and was a "transport unit only." (Mill Dep. at 11:13-17; 12:6-8; 27, Nov. 18, 2011.) Specifically, Chief Mill explained that even if alcohol had been detected, he "still would not have done anything" as it was only a human resources issue. (*Id.* at 27:6-20.) Tellingly, when the technician presented Mill with the results of her Breathalyzer test, he did not look at them but instead took them back to human resources. (*Id.* at 37:5-13.) In fact, he had not even seen the blood alcohol test until presented with it at his deposition. (*Id.* at 39:8-9.)

There is no contrary evidence in the record suggesting that there was any law enforcement purpose involved with the Breathalyzer test at issue here. Instead, Donegan presents a counterfactual scenario in which she would have been exposed to prosecution for constructive drunk driving if the Breathalyzer test had come out sufficiently positive. First, this argument is not compelling on the facts as Donegan testified that Chief Mill asked her how she got to work that day specifically in case she needed to be driven home. (Donegan Dep. 34:23-35:4, Sept. 27, 2011.) Moreover, this argument is a red herring as it would apply with equal force even if a school janitor had driven Donegan to the medical center. As Donegan's issue is with being escorted by police officers, this argument is irrelevant.

Therefore, since I find no clear error in my July 3, 2012 Memorandum and Order, the instant motion for reconsideration will be denied.

## **CONCLUSION**

Plaintiff Siobhan Donegan argues that my July 3, 2012 Memorandum and Order was incorrect as a matter of law since a police officer can never administer a special needs search. While it is axiomatic that a special needs search may not have an immediate

5

objective of law enforcement, it does not follow that police officers are wholly precluded from involvement in such searches.  Therefore, as I find no clear error in my earlier Order, Donegan's motion for reconsideration will be denied.  An appropriate Order follows.


| August 15, 2012 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |